Our next case for argument is 24-1611, In Re. Blue Buffalo Enterprises. Mr. Jordan, please proceed. Thank you, Your Honor. May it please the court, Vidalano Jordan for Appellant Blue Buffalo. Good morning and thank you. We are asking the court to reverse the sole non-obviousness objection presented in this case for primarily two reasons, either of which would justify reversal. Those two reasons are, first, a failure of the board to establish a prima facie case of obviousness, and two, an interpretation of configured to and configured for as capable of in conflict with case law established by this court. On the first point, the board ignored the teachings of Coleman that teach away from the claimed invention and made arguments that destroyed Coleman for its intended purpose through modifications being made through impermissible hindsight. Applicants and inventors identified that wet pet food is commonly removed from a can with a utensil and placed on a dish or plate for consumption. Many consumers would prefer not to use a utensil that they themselves eat with or to purchase dedicated pet utensils. The claimed invention avoids this problem by specifically configuring a container to enable a user to readily compress a sidewall of the container to reduce its volume in order to dispense food from the container. The inventors also took into account that stored pet foods of higher quality typically have chunks of food, such as chicken or beef chunks, to specifically be able to break up and or tenderize these chunks of the dispensed food product. But this is, counsel, this is a product claim. It's not a method claim, right? Correct. And it's a product claim that requires that the container be configured to readily deformable by hand of a user, the volume, and the storage area, which is the food. Correct. So why isn't the PTO right that that just means the container has to be capable of doing so? So any container that is capable of doing that, whether that was the reason they made it that way or not, is going to fall within that language. That actually goes to our second point, and that's relevant to the case law of this court. Well, the case law in this court that you cited doesn't construe the word configured to. It construes the word adapted to. And those cases also relied on surrounding language in the specification. It wasn't limited exclusively to the word adapted to, even. So it's not the same term, so I don't see how we're bound by that. And it used other things. So my concern at a high level is that you're taking a product claim that has to have structural limitations, and you're infusing an intent element, intent, that the person had to design this structure with this intent in mind, as opposed to we design the structure without that intent, but it happens to actually do that. I feel like that's good enough, because it's a product claim. Your Honor, respectfully, the Aspects Ioware case and the Gianelli court cases help establish, sort of clarify your question. They could not, you're correct, that the claims in those cases were cited adapted to. And by reading those decisions, they necessarily refer to and use configured to in reaching their decision. I'll give the example. So the court basically makes clear that there are distinctions to be made between capable of versus adapted to versus configured or designed to. With capable of being on one end of the spectrum or scale, in other words, less specific in scope and easily met by the prior art. On the other end of the spectrum or scale, is configured or designed to, in other words, more specific in scope and harder to meet with prior art. With adapted to limitations being really in between these two ends of the spectrum, as held in Aspects Ioware and Gianelli. The Gianelli case really is particularly on point in that that rejection was an obvious misrejection and the claims recited adapted to language, which is relevant to configured to and configured for language as recited in applicant's claims. Neither of these facts are true with regard to the Schreiber case. The Gianelli court was dealing with a bench press machine being modified by the rejection into a rowing machine. In other words, a user sitting backwards on the machine. Can you maybe go back to my original question, which was, I feel like you're trying to infuse intent, intent to design something this way, into the analysis. And I don't see how that's relevant. What's relevant is that the product itself is capable of doing this. It's not really matter whether you did it for a particular reason or not, right? I don't see what's wrong with that. At the end of the day, it's kind of where the PTO came out, and I think that's unassailable. So that's my problem. I would submit, Your Honor, that the Aspects Ioware and Gianelli cases have very similar claim limitations in that there is functional language in a structural and an apparatus claim. Those cases support that contention that that is permissible. And the language following configured to should not be ignored or considered or be interpreted as just anything being capable. Following up on the Chief Judge's questions, I guess the concern I have then is taking out your, spinning out your theory to the next step. Does that mean that configured to can be magic words added anywhere to have the effect that you're talking about to add this intent element? No, I think actually the opposite is capable of is magic. You know, almost, there's no bounds to it. Because there's many things, you know, capability is very, very broad. And interpreting configured to to be more narrow and very specific as to clarifying what the structure in the claim, how it functions, which is permissible to have functional term claiming in apparatus claims. It's very clear from those two decisions that configured to is actually more narrow than adapted to. And it's not an intent. It's really clarifying the structure that's present in the claims. Well, how is it not an intent? And I know, I guess it seems, I'm not sure what else it can be. You have to identify either the defendants you know, an accused infringer, the defendant's designer or manufacturer and what that entity or person was thinking about when creating this particular structure. What use that person or entity was thinking about. It does feel like it might have been the same, the same question might well have been asked in Gianelli and aspects. Was that this worry about building an intent and discussed in either of those opinions? Not that I recall, Your Honor, but to the Chief Judge's question with regard to this, looking to the specification. It is true that the Gianelli Court looked to the specification to arrive at a narrower interpretation of capable of. The same can be done in this case. Paragraphs 18 through 20 of Appellant Specification, that's Appendix 31 for the record, provide a significant amount of detail as to what it means to configure the claim sidewall to be readily deformable. They mention below molding and magnitudes of thinness. And it also is clear that what it means to configure the claimed projection for use in breaking up and or tenderizing the food product after the food product is removed from the storage area. I'm on page 31 of your appendix, which is where 18 through 20 are contained. And this, it seems to me, is mainly defining how the structure ought to be so that it will be able to allow the ready deformability that is sought. So it's very structural, right? So that's my point, Your Honor. Yes, go ahead. But it's providing structure to support what it means to be readily deformable in this, for the sidewall to be readily deformable. Yeah, but I don't know how that gives me any information about whether the term configured to should be construed as capable of. Because if the word configured to is construed as capable of, it's completely consistent with everything in 18 to 20. I don't see a problem with the PTO's construction. I don't see how these paragraphs, 18 through 20, help your argument. What am I missing? It's going to the intent question. The fact that this is more than just- Well, it's telling you why you're building it this way. You're building it this way so that it'll be able to chop the food up. Yes, Your Honor. It's to eject, the deformability of the sidewall is to inject the food from the container, which runs contrary to what's taught in Coleman. Coleman teaches that the food remains in the container for consumption. There's no reason to deform the sidewalls of Coleman based on the teachings of Coleman to eject food from that container. It's a feeding container. Did you claim in Claim 1 that there has to be food ejection somehow? Yes, it's mentioned twice. It says, causes the food product to eject the store, to exit the storage area for further processing with the tool portion. And then in the last passage, break up and or tenderizing the food product after the food product is removed from the storage area. So Coleman, there's no, go ahead, sorry. No, please, go ahead. Coleman is, that runs contrary to everything that Coleman teaches. It's taught to be able to, if you're on the move, you wanna feed your pet very quickly, you can put it down and pull it off and that's it. If you dispense the food from the container, you're defeating the purpose of that first purpose. And then if once the food is out of the container, why do you need the bottom store, the non-slip surface on the bottom of the container to keep it from slipping? So are you saying the Coleman product itself isn't capable of breaking up or tenderizing the food product after the food product is removed from the storage area? I'm saying, no, Your Honor, I'm saying it's not configured to do that. And if you modify Coleman, as we have recited in our claims, you destroy it for its intended purpose. And that is to keep it, to feed the pet and to keep the container from moving around on the floor. Once the food is out of the container, there's no need to have the non-slip surface on the bottom. Okay, if I do not agree with your claim construction, if I think the PTO is correct in concluding configured to means capable of under the facts of this case, do you have any remaining argument about the obviousness determination that is not predicated on you prevailing on claim construction? It's, yes, primarily it's the rationale, having a rationale to modify Coleman. If I take the intent piece off the table, that's your claim construction. If I say that the structure just has to be capable of doing this, then do you have any remaining, is there anything else to this case? Did you argue that even if you adopt the board's claim construction, we still should win because? I don't see that in your brief, so I just want to, I'm just, as a housekeeping matter, I need to know. Well, we did also argue the shift of the burden, the fact that the board's reliance on basically this capability being equivalent to inherency was basically incorrectly shifting the burden on applicants to show, to prove a negative, which is essentially impossible, an impossibility. Okay, so the legal, those are both legal arguments. The legal argument, your argument is they shift the burden, that's a legal argument. I gotta figure out if they shifted the burden. And then the other legal argument is the claim construction argument. But are you agreeing that you do not have a separate obviousness argument under the correct claim construction if the correct claim construction is capable of? The other main issue is obviously the case law of this court. That's aspects I wear. No, that's claim construction. I don't see how that has anything to do. I'm asking you if you have a fact argument about the particular prior art references that does not hinge on me agreeing with your claim construction argument. Primarily, it's teaching away. It's teaching away of modification of aggression, which is the foundation of obviousness. What's teaching away? Modifying. You don't have to modify Coleman if it's capable of. Do you dispute that Coleman is capable of these things? Do you dispute that? If the word had not been configured to, had been capable of, do you dispute that Coleman is capable of those things? Your Honor, anything is capable, but I would say that capability is so broad it's very difficult to combat that. I'm not asking if you want to combat it now as a matter of first principles. I'm asking, did you? Did you argue in your brief that Coleman is not capable of doing this? We did not. We argued that our claim's capable. It is not configured to perform that construction. I agree you argued that, 100%. Okay, let's hear from Ms. Lateef, and then I'm going to restore two minutes of your rebuttal time.  Good morning. May it please the Court. I just want to start off by saying that opposing counsel here has made a bunch of arguments about the fact that Coleman is not configured to do the tenderizing, and Coleman doesn't have to be configured to do that. I think as Chief Judge Moore stated several times, all that needs to happen here is that Coleman has to be capable of tenderizing the food, and Coleman is capable of doing so because Coleman has projections at the bottom of its container that are shaped similarly to Blue Buffalo's projections, and as a result of having that structure, they are capable of tenderizing. I'm sorry, did you just say that it doesn't have to be configured to if it's capable of, and thereby implying that configured doesn't here mean capable of? What I, I may have misspoke. What I was really trying to say is there is a big talk about whether or not Coleman can deposit the food onto a plate or something, inject the pet food, and what I really was trying to articulate was that that doesn't matter whether Coleman holds the food or not. The fact that Coleman has the capability to tenderize food if it is outside of the container is all that is needed here because what you do is you look at a functional claim limitation and you say is there a corresponding structure in the prior art, and if there is a corresponding structure within the prior art, then the burden shifts to the applicant to say, well, let me show you how that corresponding structure cannot do this same thing that my structure can do, and they did not do that here. And is Coleman the only prior art relevant to our discussion here? Should we, can we also discuss Loden, Williamson, Shin? With respect to the projections, the only prior art reference that matters is Coleman. Loden related to whether or not there was the projections integrally related to the container, and then Williamson and Shin talked about the deformable walls. But in the blue brief to this court, the whole focus was on whether or not these projections existed that could be configured for tenderizing the food. So the only thing that this court needs to focus on is whether or not Coleman has such projections, and Coleman does. And the board made that finding and said, look, they both are pyramidal, they both are at the bottom of the container, and therefore, because they have the same structure, Coleman is capable of doing that thing. I think so. If there are no further questions. Oh, yeah. Sure, go ahead. Configured to. Yes. I think you just made an argument that assumes the answer to, I think, the claim construction question that we were talking about the last 15 minutes, that configured to requires nothing more than capability. So, sorry, I'm sorry, Your Honor. No, no, and the principal argument, at least as I hear it and process it, is that the aspects and Gianelli cases in interpreting a different phrase adapted to pretty clearly understood that configured to was different from capability because aspects lays out, well, there are several different possible meanings. One of them is capable of, the other is configured, designed to, and here we think adapted to can be this narrower one. So it's not, neither aspects nor Gianelli is strictly interpreting a claim phrase adapted to, and maybe that's crucial, but it's assuming that configured to is different from capability. So the related question is, why doesn't that involve the very same injecting intent that is the worrisome aspect of the current debate? So I think what those two cases are doing is saying there's no per se meaning behind the word adapted to or configured for or any variation of that. What it is saying is sometimes those phrases can be read narrowly, sometimes those phrases can be read broadly to mean capable of, but what you have to do is look at what's going on in the specification or the claims. That is where I would start with those cases. We are in a situation where this is examination, so we're under a BRI standard, so we must look at this broadly. I know aspects in particular was litigation, so that would be under a Phillips standard, but in addition to that, when they looked at the claims. Right, but Gianelli was not, and although I don't have your brief in that case, you lost Gianelli. Yeah, and I will get to Gianelli, Your Honor. I just wanted to make the point that you're looking at not just that language and making a rule and saying configured for means this or means that. You then look at how is it being used within the specification. So even in aspects, and I will get to Gianelli, Your Honor, I promise, but in aspects, the magnetic members on the eyewear, they looked at there was a little claim differentiation issue there. So you had a claim, I might have the numbers wrong, but I think in aspects, it was a claim 20 that used adapted to, and then in claim 19, they used capable of. So they said, well, obviously in this particular case, those mean different things, and they took the narrower application of adapted to because you wouldn't have, if you wanted adapted to in that sense to be capable of, you wouldn't have used it in the claim earlier. With respect to Gianelli, again, you have to look at what's going on factually in the case. And in that situation, again, it was how the, I think the bars were, the levers on the arms were connected such that one could pull or push. And in Gianelli, it was sort of like the way they were made structurally, there was no way for the prior art to be capable of. So in that sense, when you looked at the facts of the case, there was no other way to read it but in a narrow reading. Here is a little bit different. When you look at the prior art of Coleman, there's nothing precluding it from looking at configured for it to be broader. And again, we're under BRI. There's no way that it's, that the projections are explained or described such that you would narrow the definition of those particular projections. So just to reframe, it's not a matter of configured for must mean this all the time or adapted to must mean that all the time. You really have to look at the context of the specification in the cases in which you're trying to understand how to construe that particular phrase. And if there are no further questions, I respectfully ask that you affirm the board's decision in an open time. Thank you, Mr. Teague. Mr. Jordan. Thank you, Your Honor. I would like to point out that this is an obvious misrejection, which is implicitly an indication on the part of the board and the office that there are some aspects of the primary reference Coleman that are not met. And if you look at Williamson and Shin, there would be no reason to use those reference in combination with Williams to achieve this, what is being used in the rejection capability to arrive at the rejected claims. Okay, can I think further? Okay, we thank both counsel. This case is taken under submission.